[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
SUPPLEMENTAL MEMORANDUM OF DECISION
This matter came before the court as a contested case. The defendant wife resisted in agreeing that the marriage was over. She hoped that through some unknown set of circumstances the parties would be able to communicate with each other, something they rarely did during the marriage, and that the marriage would be saved. It can be fully appreciated that after thirty-six (36) years of marriage she would want to try to salvage it, but as she testified, she was accepting the fact that when her husband told her that the marriage was over, it probably was.
The parties were married on October 20, 1956 in Long Island, New York. There are three children issue of the marriage, none of whom are minors. The plaintiff husband is sixty (60) years old; the defendant wife is sixty-one (61) years old. The parties have been separated since May of CT Page 3874 1992. The husband, as of the date of the hearing, December 8, 1992, was working for the Danbury News-Times as the temporary business editor while the actual business editor was absent. It was expected that this position would end in January of 1993. His regular employment with the paper is that of a stringer, covering towns and writing stories for which he is paid $60.00 per story. He has been doing this independent reporting since he left writing the obituary column for the paper. As an independent reporter, he earns approximately $12,000 per year. He likes and expects to continue this type of work.
The husband, prior to his retirement in May of 1987, worked for I.B.M. He started with the company as a clerk and rose to be director of personnel for a unit of 5,000. He directly supervised people as part of his job. When the company offered an early retirement plan, he took it. His wife was not in favor of his retiring early because she was concerned about what he would do during retirement. It was not necessary for health or any other reason for him to take an early retirement. He indicated that he thought he would like to do something else and that was one of the reasons for his retiring early. Since his retirement, he worked as a consultant for a software firm for a year. He did several small jobs as a consultant. Then he began working for the Danbury News-Times writing the obituary column. His other positions with the paper have already been mentioned.
The husband's education consists of a B.A. degree in English from Alfred University in New York. He also attended Princeton University Theology School for one year when he had aspirations of becoming a minister. His present health condition is good except for a glaucoma problem which is kept under control with medicine. He also has high blood pressure and further asserts he has arthritis of the fingers which will probably keep him from using the terminal on the computer in the future. While the husband displays great anxiety over the probability that he may have major surgery on his eyes in the future, the court does not find that there is sufficient credible testimony that this will in any way impair his employability.
As to the wife's health, there is no dispute that she suffers from a partial blockage of a vessel leading to the heart. At present, she is also undergoing counseling for the CT Page 3875 anxiety and stress over the breakup of the marriage. It is expected, however, that this counseling will continue for only a short period of time after the dissolution of the marriage. She presently takes prescription medicine for her heart condition and other related problems.
The wife has always opposed the breakup of the marriage. As indicated earlier, the husband has previously informed her that the marriage was over. The husband states that he believes that both are responsible for the breakup of the marriage. He fully acknowledges that in 1976 he had an affair for a period of six months and that when his wife learned of it she was devastated. The husband claims that there were problems in the marriage especially after the birth of their first child. He claims her interest in sex diminished significantly. It is noted, however, that two more children were born to the parties. He acknowledged during the course of the hearing that his wife was a good mother. She, on the other hand, acknowledged that he was a good father.
The defendant wife is a sixty-one (61) year old high school graduate. Her health has already been mentioned previously and as far as employability, she has no special training, and at the present time works part-time as a bank teller for the Ridgefield Bank. She claims that she is unable to work more hours. However, she has worked more hours when she was filling in for vacationing employees. She indicates that when she did work full-time, she found that she was totally exhausted when she arrived home and could do nothing more than go to bed. It is probable that as the anxiety lessens from the marital breakup, she could probably work for longer periods of time. The court, however, cannot conclude that she will in the future be able to work full-time.
There is no dispute that the assets of the parties are assets of the marriage.
The court finds after listening to the evidence that the major fault for the breakup of the marriage is on the shoulders of the husband. The court further finds that the marriage has broken down irretrievably and should be dissolved. CT Page 3876
The court has reviewed all of the exhibits of the parties, their financial affidavits which disclose their present income, has listened to their testimony and has reviewed all of the statutory criteria, relevant case law and in particular has reviewed section 46b-81 and 46b-82 of the General Statutes and all other relevant statutes.
Accordingly:
1. The court grants a dissolution of the marriage on the grounds of irretrievable breakdown.
2. The court finds it has jurisdiction and that the allegations of the complaint are true.
3. The husband is ordered to pay to the wife as lump sum alimony the sum of $10,200.00, payable over a period of five years in $170.00 per month.
4. The husband shall assign to the wife one-half of his IBM pension (said sum amounting to $2,115.50 per month). In order to affect such transfer, a qualified Family Relations order is entered assigning the wife to one-half interest in said pension as described in preparation of QDRO under the IBM Retirement Plan attached hereto. The court shall retain jurisdiction until the order is approved by the pension plan administrator.
5. Upon receipt of this decision, the parties shall immediately list for sale, with Eileen Foran of the Shaker Realty Company, the marital domicile located at 16 Lampost Drive, West Redding, Connecticut, at a listing price to be determined by said broker. The parties shall agree to accept the first reasonable offer within 5 percent of the listing price. The listing price should be reviewed every two months in order to determine if it should be adjusted. The net proceeds from the sale of the property, defined as gross selling price less the balance due on the first mortgage, the balance due on the home equity loan, real estate commission and customary closing costs, shall be divided as follows the wife shall receive 60 percent and the husband 40 percent of the net proceeds. Until sold, the wife shall have the exclusive use and occupancy of the property. The mortgage, taxes, insurance and home equity loan shall be equally shared by the parties until sale. CT Page 3877
6. All of the furniture and property presently within the marital domicile at 16 Lampost Drive, West Redding, Connecticut, shall become the exclusive property of the wife.
7. As to the automobiles, the wife shall retain as her own the 1991 Honda automobile. The husband shall retain as his own the Ford Escort.
8. Life Insurance — The life insurance policies listed in the husband's financial affidavit shall be the property of the wife. The policies are as follows: (a) the Traveler's Policy No. 3 755 697, face amount $10,000.00; (b) Traveler's Policy No. 3 937 616 beneficiary wife, face amount $10,000.00; (c) Prudential Policy No. IBM Group, beneficiary wife, face amount $25,000.00.
If wife is not already the main beneficiary, husband shall immediately take the necessary steps to so name her. Once named, or if already named, the husband shall not change the wife's status as a beneficiary. The husband shall be responsible to pay for all the premiums for these policies as they become due. He shall not be allowed to take a loan or hypothecate such policies for any reason. The intent is to make the wife an irrevocable beneficiary of such policies.
9. Notes Receivables — The husband shall retain as his own property the indebtedness as due from his sons, Andrew $12,650.00 and Paul $12,000.00.
10. IRA Accounts — The husband shall retain as his own property the Vanguard IRA and the wife shall retain as her own the Ridgefield Bank IRA.
11. Retirement Accounts — The husband shall retain as his own the Metropolitan Life Deferred Annuity and his Keogh Plans (People's Bank). The IBM Tax Deferred Savings Plan shall be divided equally between the parties.
12. Securities — The IBM stock shall be divided equally between the parties.
13. Savings and Checking Account — Each party shall retain the savings and checking accounts in their respective names. CT Page 3878
14. Counsel Fees — Each party shall be responsible for their own counsel fees.
McGrath, J.